UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS JIMENEZ,

        Petitioner,

   v.

FELICIA PONCE,

        Respondent.

No.  2:15-cv-0260 KJN P

ORDER

Introduction

      Petitioner is a federal prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  This action is proceeding on the original petition filed January 30, 2015.  (ECF No. 1.)  Petitioner challenges an administrative finding that he escaped while he was under home confinement, resulting in the loss of good conduct time credits and transfer back to federal custody.  (Id. at 7-13.)

      The parties consented to the jurisdiction of the undersigned.  (ECF Nos. 6, 11.)

      For the following reasons, the undersigned denies the petition.

Background

      The following facts are undisputed.

      Petitioner was convicted in the Southern District of California of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846.  (ECF No. 14-1 at

2.)  Petitioner was sentenced to 120 months imprisonment.  (Id.)  Petitioner's current projected release date is May 24, 2015, via good conduct time.  (Id.)

On April 11, 2014, petitioner was on home confinement under the supervision of the Correctional Alternatives, Inc., a Residential Re-entry Center ("RRC") in San Diego, California.  (Id. at 2-3.)  Staff members from the facility made routine home confinement calls on that day, but discovered that petitioner's whereabouts were unknown.  (Id.)  Petitioner was placed on "escape" status.  (Id. at 2.)  Petitioner was discovered on the evening of April 14, 2014, when he was apprehended attempting to return to the United States from Mexico.  (ECF No. 1 at 25.)

On May 6, 2014, petitioner appeared before a Center Discipline Committee ("CDC"), and was found to have committed the prohibited act of escape.  (ECF No. 14-1 at 3-4.)  The CDC reviewed the evidence and noted petitioner's claim that he left the country for emergency medical care, was unconscious, and could not contact the RRC to report his whereabouts.  (Id. at 4.)  The CDC also found that once stable, petitioner was "well oriented" and had access to a telephone.  (Id.)  At that point, the CDC found that petitioner had a duty to notify the staff of his whereabouts yet continued to remain at large for several days and violated the established limits of his confinement.  (Id.)  As a result, the CDC recommended a disciplinary transfer, and the matter was sent to the Bureau of Prisons ("BOP") Disciplinary Hearing Officer ("DHO") for final action.  (Id.)

The DHO agreed with the CDC's findings and sanctioned petitioner to a loss of 41 days good conduct time and removal from the RRC and RDAP programs.  (Id.)

Discussion

Petitioner raises the following claims challenging the administrative finding that he escaped:  1) denial of right to staff representative; 2) denial of right to call witnesses; and 3) insufficient evidence.

Federal prisoners have certain due process rights in disciplinary proceedings that may take away credits.  See Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974).  However, in prison disciplinary proceedings, an inmate is not entitled to the full panoply of due process rights that apply to traditional criminal cases.  Wolff, 418 U.S. at 556.  In the prison disciplinary context,

2

due process requires that the prisoner receive: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff, 418 U.S. at 563–71.

*Insufficient Evidence*

When a prisoner is deprived of good conduct time credits for disciplinary reasons, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455 (1985). Rather, the Due Process Clause requires "only that there be some evidence to support the findings made in the disciplinary hearing." Id. A federal habeas court may not "make its own assessment of the credibility of witnesses or reweigh the evidence" but, nonetheless, "there must be some indicia of reliability of the information that forms the basis for" the disciplinary decision. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

The Hill "some evidence" standard is "minimally stringent." Cato, 824 F.2d at 705. This court's task is limited to determining whether there is any evidence in the record, even if circumstantial and/or meager, to support the conclusion that petitioner was guilty of the charged offense. See Hill, 472 U.S. at 457.

Petitioner was found guilty of escape. In the response to the petition, respondent states that Program Statement 7300.09, Community Corrections Manual, Chapter 5, Page 12, Section 5.6.1, defines escape as,

> Any committed inmate who fails to report to a contract facility for admission, fails to remain at the approved place of employment or training during the hours specified by the terms of the employment or training program, fails to return to the facility at the prescribed time, or fails to return from any other approved absence at the time and place stipulated, may be placed on escape status after staff have completed and documented routine procedures to locate the inmate.

Petitioner does not dispute respondent's definition of "escape."

The disciplinary report describes the evidence on which it based its guilty finding. First, the report sets forth a summary of petitioner's statement:

> On Friday 4/11/14 I was feeling really ill. My fiancé helped me get to the car so I could get medical treatment. I passed out in the car, and she took me to a clinic in Mexico for treatment. She didn't realize I couldn't travel to Mexico. I showed her my certificate from completing the DAP and she thought I was done with the system. I had tried to be treated in the U.S. but I was rejected at several clinics, including Logan Heights. She took me to Mexico because she knew they would take care of me. I was basically unconscious upon my arrival at the hospital. I have proof from my doctor to certify the state I was in. I remained in the hospital for 3 days and I didn't wake up until Sunday, [i.e., April 13, 2014]. When I woke up, I realized I wasn't in the U.S. so I asked to be discharged immediately. Even if I wanted to call the Facility there was no phone available and our cell phones don't work in Mexico. Once I left the clinic, I headed right back to the U.S. I was stopped at the border and taken into custody. I was only a few days away from release. Why would I intentionally do this? Please look over my DAP summary. I did everything right.

(ECF No. 14-1 at 44-45.)

The report states that the committee also considered the following documentary evidence: 1) resident acknowledgement receipt; 2) medical statements and records submitted by the inmate; 3) translation of medical statements; 4) drug treatment records submitted by the inmate; and 5) inmate file. (Id. at 45.)

The report also indicates that the committee considered the following additional information. The committee denied petitioner's request to call Case Manager Karla Bolanos as a witness. (Id. at 47.) Petitioner claimed that Ms. Bolanos could have attested to his good conduct and weight loss. (Id.) The Committee stated that it would submit that petitioner's conduct was good prior to the incident, and that petitioner had weight loss during his residency at the facility. (Id.)

The committee also accepted a telephone call from petitioner's fiancé. (Id.) Petitioner's fiancé reiterated and supported the statements petitioner made to the committee. (Id.)

In finding petitioner guilty, the committee found,

////

4

> Although the evidence confirmed that you were hospitalized and apparently unable to notify the Facility of your whereabouts on 4/11/14, the very same evidence confirmed that you stabilized on 4/12/14. According to the attending physician, you reached a "well oriented" state of mind, and you had access to a telephone upon request.
>
> The Committee found that you had a duty to notify the Facility of your whereabouts when you returned to a "well oriented" state of mind. Your inmate file records reflect that you failed to make such contact. Instead, the evidence indicated that you consciously chose to remain unaccountable for several days, and violated the established limits of your confinement.

(Id. at 48.)

In summary, the committee found petitioner guilty of escape because once he stabilized on April 12, 2014, he made no effort to notify the facility by telephone of his whereabouts. In contrast, petitioner claims that he was passed out until April 14, 2014, i.e., the day he returned to the U.S. (ECF No. 1-1 at 27.) He then asked his fiancé to take him back to the U.S. (Id.) Petitioner alleges that his cell phone could not get a signal because it was not "international." (Id.)

On May 15, 2015, the undersigned directed respondent to file the record, relied on by the committee, which stated that petitioner was "well oriented" on April 12, 2014, with access to a telephone. (ECF No. 15.) On May 19, 2015, respondent filed a letter by petitioner's doctor in Mexico dated May 23, 2014. (ECF No. 16-1.) The translation of this letter states, in relevant part,

> Concerning Mr. Jiminez' case, like I mentioned to you the first time I had the pleasure of speaking to you, he was brought to my unit, under my care, after he fainted. He arrived in a preconscious state of mind with a heightened confusion and it was discovered that he experienced bleeding from the rectum area, demonstrated signs of dehydration and paleness, and was significantly disturbed/uncomfortable. This is the reason he traveled [for my medical services]. Based on the [procedures recommended by] I.V., I administered sedatives and an ample amount of fluid, in order to stabilize his condition. I admitted him on 4/11/14 at 07:30 a.m. On Saturday morning, 4/12/14, we suspended the sedatives in order to evaluate him. He found himself in a well oriented [in a good state of mind] of time and person. Although he was surprised to find himself at the location, the uncomfortable/unbearable state diminished and was dormant/inactive.
>
> He never requested to call anywhere...even though there is no

> phone in the room because of past abuses, we do allow them to use our cordless phone but, again, I repeat, he never requested to make a call.
>
> Since he was stable, I considered it pertinent to send him home so that he could continue his recovery on 4/13/14 at 11:30 a.m., instructing him to return so that I could properly diagnose him. On April 15, 2015, his girlfriend was called, since she had a dentist appointment [at my clinic], and that is when I became aware of the situation [he] was experiencing. I would like to make it known that I have not had personal contact with her.

(ECF No. 16-1 at 1-2.)

The letter above indicates that petitioner was mentally alert on April 12, 2014, rather than on April 14, 2014, as alleged by petitioner. The letter also indicates that petitioner was released from the clinic on April 13, 2014, and not April 14, 2014 as petitioner claims. Thus, petitioner was unaccounted for approximately 24 hours when he was apprehended at the border on April 14, 2015. The letter also indicates that petitioner could have made a telephone call from the clinic had he requested. The statement in the letter that petitioner's girlfriend was called from the clinic suggests that the telephone in the clinic had international calling capability.

Based on the letter set forth above, the committee had "some evidence" on which to base its finding that petitioner was guilty of escape. While petitioner may have been unconscious when he first went to Mexico, the letter from his doctor indicates that he was conscious for at least two days before his return to the U.S. The letter also indicates that petitioner left the clinic approximately twenty-four hours before returning to the U.S. The letter also indicates that petitioner could have called the facility from the clinic had he requested. For these reasons, the undersigned finds that there was sufficient evidence to support the committee's finding that petitioner committed the offense of escape.

*Alleged Denial of Staff Representative*

Petitioner alleges that during the May 5, 2014 hearing, he requested that Ms. Tania Lopez, the Community Correctional Center Supervisor, be assigned as his staff representative. (ECF No. 1 at 18.) Petitioner requested Ms. Lopez as his staff representative because she was "intimately familiar" with the struggles he went through to obtain medical care as well as his dramatic weight loss over an extended period of time. (Id.) Petitioner alleges that Ms. Lopez could also have

attested to his good behavior and good character at the halfway house. (Id.) Petitioner alleges that his request for assignment of Ms. Lopez as staff representative was denied because she had been the staff member who notified the U.S. Marshal of his alleged escape. (Id.)

Petitioner did not have a constitutional right to have a staff representative at his hearing. Petitioner is entitled to staff assistance if he is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff, 418 U.S. at 570.

Petitioner does not allege that he is illiterate. The undersigned further finds that the escape charges were not complex. Moreover, it is clear from the petition that petitioner chose to go forward with no staff representative because he could not have Ms. Lopez assigned. (ECF No. 1 at 20.) The notes from the disciplinary report state that after the committee told petitioner that Ms. Lopez could not be his staff representative because she made the escape notification to the Bureau of Prisons, the committee offered petitioner the option to select another staff representative. (ECF No. 14-1 at 47.) Petitioner instead decided to go forward with no staff representative. (Id.) Therefore, even assuming petitioner had a right to a staff assistant, petitioner waived that right by declining appointment after being told he could not have the staff representative of his choice. For these reasons, this claim is without merit.

*Alleged Denial of Right to Call Witnesses*

Petitioner alleges that he was denied his right to call his Case Manager, Karla Bolanos, as a witness. (ECF No. 1 at 21.) Petitioner alleges that Ms. Bolanos could have testified regarding his conduct at the halfway house, and she could verify his ongoing sickness and weight loss prior to the alleged escape. (Id.) Petitioner alleges that Ms. Bolanos could also have verified that on April 16, 2014, she received a telephone call from Louise Evans at MCC San Diego informing her that petitioner was being held at MCC San Diego. (Id.)

In denying petitioner's request to call Ms. Bolanos as a witness, the committee said it would acknowledge that petitioner had lost weight at the facility and that he had not been in trouble while there. (Id.) Petitioner argues that these "acknowledgements" could not have adequately replaced the testimony of Ms. Bolanos. (Id.) Petitioner argues that Ms. Bolanos could

7

have testified regarding when his symptoms began, what staff members knew about his condition, and what steps petitioner took to obtain treatment prior to his alleged escape. (Id.)

Petitioner also argues that he was denied his right to call Louise Evans as a witness. (Id. at 24.) Petitioner alleges that he was found guilty, in part, based on the finding that he did not notify the halfway house of his whereabouts even though he was stable on April 12, 2014. (Id.) The committee found that petitioner chose to remain unaccountable for several days. (Id.) Petitioner argues that when he was taken into custody on April 14, 2014, he was taken by the U.S. Marshal to MCC San Diego. (Id. at 25.) Upon his arrival, he requested a phone call so that he could notify RCC of his whereabouts. (Id.) While petitioner had a cellphone, it lacked international calling capability. (Id.) On April 16, 2014, he was allowed his phone call. (Id.) He had MCC San Diego Staff Member Louise Evans call Ms. Bolanos so that he could speak with her. (Id.) During this phone call, petitioner told Ms. Bolanos that this was the first time he truly had access to a telephone. (Id.)

Petitioner alleges that Ms. Evans would have testified that on April 16, 2014, she contacted Ms. Bolanos on his behalf. (Id.)

A disciplinary authority may decline to allow an inmate to call a witness for irrelevance, lack of necessity, or hazards presented in individual cases. Baxter v. Palmigiano, 425 U.S. 308, 321 (1976). A prison disciplinary hearing officer's decision that an inmate's request to call witnesses may properly be denied as irrelevant, unnecessary, unduly prolonging the hearing, or jeopardizing of prison safety, is entitled to deference from the court. See Wolff v. McDonnell, 418 U.S. at 563–64.

With respect to Ms. Bolanos, the committee "acknowledged" much of her proposed testimony. Ms. Bolanos' proposed testimony did not address petitioner's failure to contact the facility once he became stable and his failure to return to the facility immediately upon his release. In other words, Ms. Bolanos' proposed testimony would not have exonerated petitioner. Based on these circumstances, the committee's denial of petitioner's request to call Ms. Bolanos as a witness did not violate petitioner's right to due process.

////

The proposed testimony of Ms. Evans also would not have exonerated petitioner. The testimony of Ms. Evans did not address petitioner's failure to contact the facility once he became stable or his failure to return to the facility immediately upon his release. Based on these circumstances, the committee's denial of petitioner's request to call Ms. Evans as a witness did not violate petitioner's right to due process.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied;

2. A certificate of appealability is not issued.

Dated: May 20, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Jim260.157

9